UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

SAMANTHA D.,
        Plaintiff,

       v.                                C.A. No. 19-581WES

ANDREW M. SAUL,
COMMISSIONER OF SOCIAL SECURITY,
        Defendant.

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

On May 15, 2017, Plaintiff Samantha D. applied for Disability Insurance Benefits ("DIB") under 42 U.S.C. § 405(g) of the Social Security Act (the "Act"), and Supplemental Security Income ("SSI") under § 1631(c)(3). Alleging onset on May 24, 2015, in her DIB application and on July 1, 2015, in her SSI application,[1] Plaintiff contends that the Administrative Law Judge ("ALJ") erred in formulating a residual functional capacity ("RFC")[2] finding that is not supported by the totality of the evidence because he failed properly to assess some of the opinion evidence – specifically, two opinions from her therapist (licensed mental health counselor, Ms. Erin Schmitz) and the consulting report from the examining psychologist (state agency ("SA") expert, Dr. Sol Pittenger) – in finding that her mental health impairments (anxiety, post-traumatic stress disorder ("PTSD") and depression) were serious but not disabling. Plaintiff has asked the Court to remand the matter for further consideration of her applications.

---

[1] The reason for the discrepancy between DIB onset (May 24, 2015) and SSI onset (July 1, 2015) is not explained. The ALJ treated the first date (May 24, 2015) as the operative one, to which the parties did not object. I have done likewise.

[2] "RFC" or "residual functional capacity" is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. § 404.1545(a)(1).

Defendant Andrew M. Saul ("Defendant") has moved for an order affirming the Commissioner's decision.

The matter has been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Having reviewed the entirety of the record, I find that the ALJ's findings are consistent with applicable law and sufficiently, indeed amply, supported by substantial evidence. Accordingly, I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 14) be DENIED and Defendant's Motion to Affirm the Commissioner's Decision (ECF No. 15) be GRANTED.

**I.      Background**

Plaintiff endured a chaotic and unstable childhood, which involved both abuse and neglect and resulted in challenging family relationship issues persisting into adulthood. Tr. 77-83. Nevertheless, as an adult, throughout the period of alleged disability, Plaintiff lived with her husband and three children. Tr. 42-43. By the time of the ALJ hearing in October 2018, she was almost eight months into a planned pregnancy. Tr. 38. In July 2015, when Plaintiff stopped working, she was twenty-seven years old and had been employed in food service and as a cashier; in the period preceding onset, she worked at a Honey Dew Donut outlet, serving food at the counter and drive-through, cleaning up and lifting trays. Tr. 49-50. Plaintiff stopped working temporarily when she hurt her back ("for about a month") and then was fired after she had an argument with the manager about how the crew from the prior shift had left the store. Tr. 56-58.

While she complains of back, neck and shoulder pain, Plaintiff testified that her biggest obstacle to working is "mainly my mental state." Tr. 55. She alleges that, "[m]ost days I cannot get out of bed, nor can I care for my children or home." Tr. 282. She described her mental state:

"My mind is like a battlefield, constant worry, panick, self loathing, doubt. I can't manage day to day tasks, important matters. I'm told I get upset to[o] easily I get overwhelmed easily." Tr. 287. Because of her condition, Plaintiff testified that her husband and children perform most of the household chores. Tr. 68-70.

Evidence of medical treatment during the period of alleged disability is spotty.

During 2015, Plaintiff saw her primary care physician, Dr. Teresita Hamilton twice, once in May and once in June. She complained of lumbar spine pain. Tr. 356-67. An X-ray and an MRI revealed nothing of significance.[3] Tr. 373-74. Dr. Saris, a neurosurgeon, advised that her back appeared "youthful," with only muscle issues; he sent her for a single spine injection and physical therapy. Tr. 397-99. The physical therapy notes reflect that, after less than two months, she was making "great gains" and would be back to work. Tr. 375-90. She was discharged for failing to appear or return calls. Tr. 390. All references to mental health status in 2015 are entirely normal. See Tr. 370 (Dr. Radlinski recorded, "Psychiatric Normal Orientation – Oriented to time, place, person & situation. Appropriate mood and affect."); Tr. 397-98 (Dr. Saris recorded, "Mental status normal. Orientation normal. Memory intact. Attention span and concentration normal. Speech normal. Fund of knowledge normal."); Tr. 402 (Dr. Handel recorded, "Recent and remote memory, attention span, concentration: unremarkable. Mood and affect: unremarkable."). While Plaintiff once complained of depression to Dr. Hamilton, Dr. Hamilton performed no mental status examinations and prescribed no mental health treatment.

During the second year of disability, 2016, there is no treatment at all until August, when Plaintiff went to a walk-in clinic and then to Dr. Hamilton, complaining of neck and shoulder pain. Tr. 609-18. Despite a normal x-ray and the observation by the clinic that symptoms had

---

[3] The MRI findings were interpreted by the radiologist as not clearly the source of Plaintiff's symptoms as "any one of these findings can be seen in asymptomatic patients." Tr. 374.

3

quickly resolved, Tr. 411, she was referred for physical therapy, which she pursued from August through December 2015, when she decided to stop. Tr. 414-78. Physical therapy notes reflect that, in October, she could do yardwork and, by December, she showed "marked improvement recently in overall symptoms . . . [r]ecently doing a lot of housework, painting – tolerated fairly well but taking breaks every hour." Tr. 471. These notes also record that Plaintiff advised that she "[d]oes not work but cares for 3 small children at home." Tr. 414. As in 2015, all mental status examinations in 2016 were entirely normal. Tr. 411 (Dr. Vafidis recorded, "Mood has been good and overall doing well."). As in 2015, she saw Dr. Hamilton only twice; at the September 2016 appointment, Dr. Hamilton prescribed Zoloft for "[m]ood disorder," Tr. 612, although the record reflects no mental status examination and no observations supporting this diagnosis. Tr. 609-18.

For the first four months of 2017, Plaintiff had no treatment with any provider. Then on May 15, 2017, she applied for disability. Tr. 251-70. Meanwhile, in late April, she began mental health counseling for the first time, with an initial appointment at East Bay Community Action Program, where Dr. Hamilton practiced. Tr. 480-500. At intake, a licensed social worker diagnosed depression and anxiety, noting that, "this client presents with impairment in daily functioning due to psychiatric illness but does exhibit adequate control over behaviors and has been assessed not an immediate danger to self or others." Tr. 498. Therapy was prescribed; on mental status evaluation, anxious, depressed mood and constricted affect were observed, but all other metrics were normal. Tr. 498-500. On June 29, 2017, after three sessions at East Bay, Plaintiff switched counseling to Anchor Counseling Center. At intake at Anchor, the licensed mental health counselor, Ms. Schmitz, diagnosed anxiety, PTSD and depression, but also recorded largely normal observations. Tr. 509-10 (e.g., good eye contact, cooperative, pleasant

4

attitude, euthymic mood, appropriate affect, "appropriately dressed for the weather. . . . Overt Behavior can be best described as relaxed without any visible signs of Anxiety."). From June through the end of 2017, Ms. Schmitz saw Plaintiff for weekly therapy, which focused on her family relationship challenges, such as her frustration with her husband's "lack of help with parenting, household issues." Tr. 505-17, 560-69. At each appointment, Ms. Schmitz made observations, which continued to be largely normal, including clean, well-groomed appearance, although she occasionally noted anxious and depressed mood and tearfulness. See, e.g., Tr. 562 ("appeared calm and reflective, mildly depressed and mildly anxious"). On July 22, 2017, Ms. Schmitz wrote an RFC opinion letter regarding Plaintiff; she opined to a mild/moderate impairment in understanding, carrying out and remembering instructions, a mild impairment in responding to supervision and coworkers and a moderate impairment in the ability to respond to work pressure. Tr. 505.

Also in June 2017, Plaintiff resumed monthly appointments with Dr. Hamilton, complaining of Lyme exposure, back, neck and shoulder pain and a colitis flare-up, but also reporting her plan to get pregnant. Tr. 572-607. Lyme was never diagnosed,[4] Tr. 534, 583; the colonoscopy was normal, Tr. 549; and MRIs of the cervical spine, lumbar spine and shoulder were all normal. Tr. 529-31. Dr. Hamilton performed mental status examinations at each of the six 2017 appointments. She sometimes recorded entirely normal observations, Tr. 574, 591, while at other appointments, she noted anxiety and anhedonia, and occasionally hopelessness. Tr. 580, 585, 598, 606. Like Ms. Schmitz, Dr. Hamilton consistently noted that Plaintiff was appropriate in behavior. E.g., Tr. 574 ("Behavior is appropriate for age."). Dr. Hamilton never noted any abnormalities in appearance or clothing. Other 2017 treating sources made normal

---

[4] One record indicates that Lyme has been diagnosed, treated and resolved in October 2016. Tr. 583.

5

observations. Tr. 534 (Dr. Sanchez noted, "Alert and oriented x 4"); Tr. 661, 665 (Nurse Practitioner Botelho twice observed, "Mood and affect normal").

On August 8, 2017, the SA psychologist, Dr. Pittenger, performed a consultative examination. Tr. 519. As the ALJ noted, Dr. Pittenger's report contains observations that clash with those of every treating source, particularly Ms. Schmitz.[5] Tr. 23-24. Most notably, he described Plaintiff's tense, guarded and belligerent demeanor, bizarre appearance and inappropriate clothing, her complete failure to make eye contact, and her aggressive and critical manner. Tr. 23-24. Based on these observations, Dr. Pittenger concluded that Plaintiff suffers from a personality disorder, a diagnosis entirely missing from the treating records.

On November 9, 2017, a consulting SA physician, Dr. Jay Burstein, performed an examination of Plaintiff's neck, back, hands, shoulders and arms. Tr. 543. He found her limited in the ability to lift more than fifteen pounds, in performing motions involving the shoulder and upper extremity, and in bending and twisting, but otherwise found normal gait, strength and range of motion. Tr. 544.

These treating records were reviewed by three SA physicians (one a psychiatrist) and a psychologist. Their file review was completed in January 2018. Based on an analysis that is well-grounded in the evidence, for Plaintiff's physical RFC, they found that she retained the exertional capacity to perform light work with additional limits, including limits in the use of her upper extremities. E.g., Tr. 159-60. For mental limitations, the SA experts accurately summarized the evidence, including the lack of any "mention of psych impairment" until September 2016, the mental health treatment with Dr. Hamilton and Ms. Schmitz, Ms. Schmitz's

---

[5] Dr. Pittenger also recorded statements that seem at odds with other records. For example, Plaintiff told him that she had "gradually gained about 40 pounds over the past six years." Tr. 520. Yet the medical record reflects a weight gain of no more than fifteen pounds over the prior seven years. Tr. 602, 656.

RFC opinion of July 22, 2017, and the Pittenger report.  E.g., Tr. 156-57.  Based on their expert interpretation of these records, they opined to moderate limits in Plaintiff's ability to carry out detailed instructions, to get along with supervisors, coworkers and the general public, to respond to workplace changes and to sustain pace and attention.  E.g., Tr. 160-62.

After the completion of the SA file reviews in January 2018 until the ALJ hearing in October, Plaintiff's only treatment was the continuation of the weekly therapy sessions with Ms. Schmitz.  Tr. 621-52.  As the ALJ correctly summarized, Ms. Schmitz's mental status examinations continued to be largely normal, with "episodic changes in mood congruent with situational stressors."  Tr. 23.  In addition to an occasional anxious mood, Ms. Schmitz sometimes noted lethargy as Plaintiff's pregnancy advanced, although at other sessions, Ms. Schmitz made totally normal observations.  Tr. 628, 651.  There is no reference to worsening; to the contrary the Schmitz 2018 treating notes reflect, "[o]verall clt has handled recent events well and clt credits being pregnant for this."  Tr. 645

During 2018, Ms. Schmitz submitted two more RFC opinions, one signed in March and one signed in September.  Tr. 682-87.  By contrast with her 2017 opinion (which found only mild or moderate limits), in 2018, Ms. Schmitz opined to moderately severe limits on the ability to relate to other people, to get along with coworkers and supervisors and to respond to work pressures.  Ms. Schmitz also noted a moderately severe deterioration of Plaintiff's personal habits, a finding that is entirely inconsistent with her treating notes, which describe Plaintiff as "Well groomed Casual and Clean" in appearance at every 2018 appointment, including the ones that are precisely contemporaneous with the Schmitz opinions.  Compare Tr. 682, 685, with Tr. 624, 652. Without explaining why, the Schmitz opinions state that Plaintiff would be off task up to four times a day and would miss work up to four times a month.  Tr. 683-84, 686-87

7

The ALJ's decision finds the opinions of the SA examining experts and Dr. Burstein to be persuasive. Tr. 28. The decision notes the dichotomy between the Pittenger observation of Plaintiff's bizarre presentation at his one-time examination and the balance of the relevant record, which reflects observations of a cooperative and appropriately dressed individual who makes good eye contact. Tr. 27-28. It finds the latter two Schmitz opinions to be lacking in probative weight because of their inconsistency with the "benign findings on her own mental status examinations, and relatively routine treatment [Plaintiff] has received." Tr. 24-25.

## II. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999). Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); see also Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981). The determination of substantiality is based upon an evaluation of the record as a whole. Brown, 71 F. Supp. 2d at 30; see also Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). Thus, the Court's role in

reviewing the Commissioner's decision is limited.  Brown, 71 F. Supp. 2d at 30.  The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner.  Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)).  "[T]he resolution of conflicts in the evidence is for the Commissioner, not the courts."  Id. at 31 (citing Richardson v. Perales, 402 U.S. 389, 399 (1971)).

If the Court finds either that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim, the Court may remand a case to the Commissioner for a rehearing under Sentence Four of 42 U.S.C. § 405(g).  Allen v. Colvin, No. CA 13-781L, 2015 WL 906000, at *8 (D.R.I. Mar. 3, 2015) (citing Jackson v. Chater, 99 F.3d 1086, 1097-98 (11th Cir.1996)).  If the Court finds that a judicial award of benefits would be proper because the proof is overwhelming, or the proof is very strong and there is no contrary evidence, the Court can remand for an award of benefits.  Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001).

### III. Disability Determination

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 416(I); 20 C.F.R. § 404.1505.[6]  The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-1511.

#### A. The Five-Step Evaluation

---

[6] The Social Security Administration has promulgated identical sets of regulations governing eligibility for DIB and SSI.  See McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1120 n.1 (1st Cir. 1986).  For simplicity, I cite to one set of regulations only.

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. § 404.1520.  First, if a claimant is working at a substantial gainful activity, the claimant is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled.  20 C.F.R. § 404.1520(e)-(f).  Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted.  20 C.F.R. § 404.1520(g).  Significantly, the claimant bears the burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five.  Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five step process applies to both DIB and SSI claims).

The claimant must prove the existence of a disability on or before the last day of insured status for the purposes of disability benefits.  Deblois v. Sec'y of Health & Human Servs., 686 F.2d 76, 79 (1st Cir. 1982); 42 U.S.C. §§ 416(i)(3), 423(a), 423(c).  If a claimant becomes disabled after loss of insured status, the claim for disability benefits must be denied despite disability.  Cruz Rivera v. Sec'y of Health & Human Servs., 818 F.2d 96, 97 (1st Cir. 1986).

**B.     Opinion Evidence**

For applications like this one, filed on or after March 27, 2017, the SSA has fundamentally changed how adjudicators assess opinion evidence.  The familiar and longstanding requirements – that adjudicators must assign "controlling weight" to a well-

10

supported treating source's medical opinion that is consistent with other evidence, and, if controlling weight is not given, must state the specific weight that is assigned – are gone. 20 C.F.R. § 404.1520c(a). Instead, adjudicators "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." Id. Rather, an ALJ must consider the persuasiveness of all medical opinions in a claimant's case record. See 20 C.F.R. § 404.1520c. The most important factors to be considered when the Commissioner evaluates persuasiveness are supportability and consistency; these are usually the only factors the ALJ is required to articulate. 20 C.F.R. § 404.1520c(b)(2); Jones v. Berryhill, 392 F. Supp. 3d 381, 839 (M.D. Tenn. 2019); Gorham v. Saul, Case No. 18-cv-853-SM, 2019 WL 3562689, at *5 (D.N.H. Aug. 6, 2019). Supportability "includes an assessment of the supporting objective medical evidence and other medical evidence, and how consistent the medical opinion or . . . medical finding is with other evidence in the claim." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5859 (Jan. 18, 2017). Other factors that are weighed in light of all of the evidence in the record includes the medical source's relationship with the claimant and specialization, as well as "other factors" that tend to support or contradict the medical opinion or finding. See 20 C.F.R. § 404.1520c(c)(1)-(5); Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. at 5859. In other words, "[a] medical opinion without supporting evidence, or one that is inconsistent with evidence from other sources, [is] not . . . persuasive regardless of who made the medical opinion." Id. at 5854.

      If the record contains "two or more medical opinions . . . about the same issue [that] are both equally well-supported . . . and consistent with the record," the ALJ's decision must articulate how the other persuasiveness factors were considered. 20 C.F.R. §§ 404.1520c(b)(3).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. § 404.1520b. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1520b(c)(3). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion. See 20 C.F.R. §§ 404.1545-1546; see Dudley v. Sec'y of Health & Human Servs., 816 F.2d 792, 793-94 (1st Cir. 1987) (per curiam). The resolution of such conflicts in the evidence and the determination of disability is for the Commissioner. See Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018).

## IV.  Analysis

Plaintiff's legal argument rests on her contention that the ALJ's treatment of the two Schmitz's 2018 opinions and the Pittenger consulting report fails to comply with the requirements of SSR 16-3p, 2017 WL 4790249 (Oct. 25, 2017), which directs the ALJ to consider the totality of the case record, including the objective medical evidence, but also "an individual's statements about the intensity, persistence, and limiting effects of symptoms."[7] Id. at *49465. She also contends that the ALJ improperly acted as a lay fact finder regarding matters requiring medical expertise in finding that the Schmitz 2018 opinions lacked probative value.[8] Neither of these arguments should gain traction.

---

[7] Plaintiff does not argue that the ALJ erred in finding that her subjective statements are "not entirely consistent" with the rest of the medical evidence. Tr. 21. If she did, such an argument would fail. As the ALJ detailed in his decision, the record is replete with such inconsistencies. Compare, e.g., Tr. 68 (Plaintiff testifies that her husband does housework), and Tr. 282 (Plaintiff alleges that "[m]ost days I cannot get out of bed, nor can I care for my children or home."), with Tr. 381 (Plaintiff tells physical therapist she "walked 6 miles"), and Tr. 560 (Plaintiff tells Ms. Schmitz that husband does not "help with parenting, household issues"), and Tr. 543 (Dr. Burstein observes normal strength in all areas of body tested).

[8] The Commissioner observes that the ALJ's use of the term "probative" instead of "persuasive" at Tr. 25 is of no moment because his analysis is properly focused on persuasiveness. I agree and assume that the ALJ used the term – persuasive – that is technically appropriate in light of the adoption of 20 C.F.R. § 404.1520c.

12

First, the law permits, indeed requires, that the ALJ must consider all of the evidence, although it does not require him to credit any particular source over other substantial evidence. 20 C.F.R. § 404.1520c(a). That is exactly what the ALJ did. He accurately sifted through all of the evidence and explained why he found the SA experts' medical opinions to be persuasive "prior administrative medical findings" – because they were consistent with, and supported by, the record as a whole. Tr. 24 & n.1 (citing 20 C.F.R.§§ 404.1520b, 404.1520c). Although the ALJ properly found that Ms. Schmitz is not an acceptable medical source, even under the more expansive definition of that term set out in the revised regulations, 20 C.F.R. § 404.1502(a), he nevertheless also considered and assessed the persuasiveness of her 2018 opinions. He found them unpersuasive for the precise reasons mandated by the operative regulation – their dramatic inconsistency with Ms. Schmitz's own treating record (including her 2017 opinion) and their inconsistency with and lack of supportability by anything in the rest of the treating record. 20 C.F.R. § 404.1520c(b)(2) (supportability and consistency are the "most important factors").

Plaintiff's argument that the Schmitz 2018 opinions are consistent with each other does not advance her cause. While true, the problem, as the ALJ correctly found, is that they deviate significantly from Ms. Schmitz's treating notes, from her 2017 opinion and from the balance of the treating record. These findings do not depend on an improper lay evaluation of matters requiring medical expertise. Rather, they may be derived simply by comparing Ms. Schmitz's 2018 opinions with her mental status examinations and those of other treating sources, an exercise that is well within the ken of a lay adjudicator.[9]

---

[9] Plaintiff does not argue that remand is required because Ms. Schmitz's 2018 notes were missing from the file reviewed by the SA psychiatrist and psychologist. Nor could she. Such a remand is appropriate only when "the state-agency physicians were not privy to parts of [a plaintiff's] medical record [which] detracts from the weight that can be afforded their opinions." Virgen C. v. Berryhill, C.A. No. 16-480 WES, 2018 WL 4693954, at *2-3 (D.R.I. Sept. 30, 2018) (emphasis supplied). In this case, the clinical observations and treatment reflected in Ms. Schmitz's

Because her argument is undeveloped, it is impossible for the Court to ascertain how Plaintiff contends that the ALJ erred in dealing with the Pittenger consulting report. As far as the Court's review reveals, the report was appropriately considered both by the SA experts, who deployed their expertise in interpreting its content and in converting Dr. Pittenger's test results into RFC limitations, and by the ALJ who devoted a paragraph of his decision to its analysis. Because the ALJ relied on the SA RFC opinions, the Pittenger clinical tests scores are incorporated into the RFC. On the other hand, the diagnosis of personality disorder based on Plaintiff's bizarre presentation to Dr. Pittenger is not; the ALJ specifically, and accurately, highlighted the inconsistency of Plaintiff's dress and behavior at her appointment with Dr. Pittenger and her appearance as described by treating sources, including at more than forty sessions with Ms. Schmitz. There is no error in the ALJ's treatment of the Pittenger report.

The Commissioner is right that Plaintiff's arguments boil down to the request that this Court should improperly reweigh the evidence. Rodriguez, 647 F.2d at 222 ("[T]he resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [the ALJ], not for the doctors or for the courts."). I do not endorse this approach; to the contrary, my recommendation is based on the principle that the Court's role is simply to examine whether, "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [his] conclusion." Purdy, 887 F.3d at 13. Because, in this case, the answer is plainly yes, the Commissioner's decision must be affirmed. See id. Put differently, when the ALJ's findings are properly supported by substantial evidence – as they clearly are in this case – the Court must sustain those findings even when there may also be substantial evidence supporting the contrary position. See, e.g., Tsarelka v. Sec'y of Health & Human Servs., 842 F.2d 529, 535

---

2018 notes are the same as the observations and treatment from 2017, all of which were evaluated and interpreted by the SA experts.

(1st Cir. 1988) ("[W]e must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence.").

I find that the ALJ's decision is untainted by any error and recommend that it should be affirmed.

**V.      Conclusion**

Based on the foregoing analysis, I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 14) be DENIED and Defendant's Motion to Affirm the Commissioner's Decision (ECF No. 15) be GRANTED.  Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision.  See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
June 30, 2020